CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
JAN 07 2005
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATED DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| DELORES M. HACKWORTH, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. 6:03cv110 |
| | ) |
| JO ANNE B. BARNHART, | ) |
| Commissioner Of Social Security, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Delores M. Hackworth ("Hackworth") brings this action under Section 205(g) of the Social Security Act, as amended by 42 U.S.C. 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383F. This case was referred to the undersigned magistrate judge on March 23, 2004 for report and recommendation. After briefing and oral argument on the appeal, and based on a thorough review of the administrative record and relevant case law, it is recommended that the Commissioner's motion for summary judgment be denied and the plaintiff's motion for summary judgment be granted as the decision of the Commissioner was not founded on correct legal principles. Pursuant to Sentence 4 of 42 U.S.C. § 405(g), it is recommended that the case be reversed and remanded for proceedings consistent with Social Security Ruling 96-5p and 20 C.F.R. §§ 404.1527 and 404.1512.

Plaintiff filed an application for a period of disability and benefits on January 24, 2002 alleging disability as of July 1, 1997, based on rheumatoid arthritis, osteoarthritis, degenerative

disc disease and fibromyalgia. (Record, "R." at 18, 26) The January 24, 2002 application was denied initially (R. 43-47), and on reconsideration by the Social Security Administration (R. 51-52). Plaintiff requested a hearing which was conducted on April 8, 2003 at which time Hackworth testified before an Administrative Law Judge ("ALJ"). (R. 286-310) Plaintiff was represented by counsel at the April 8, 2003 appeal hearing. On May 30, 2003, the ALJ found that Plaintiff was not entitled to a period of disability, Disability Insurance Benefits, and not eligible for Supplemental Security Income payments under §§ 216(i); 223, 1602 and 1614(a)(3)(A) of the Social Security Act. (R. 14) The ALJ's findings became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on November 13, 2003. (R. 6-8)

Hackworth was forty-five years of age on the date of the ALJ's decision. She earned a college degree since the alleged onset and had past relevant work experience as a training coordinator/case management assessor, membership director, dispatcher, project coordinator/recruiter/employment counselor and a warehouse records clerk. (R. 94, 99)

In making the determination that Plaintiff is not entitled to benefits, the ALJ found that Hackworth had severe impairments in the form of seronegative rheumatoid arthritis, osteoarthritis, and fibromyalgia, but these impairments did not meet or medically equal the requirements of any of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (R. 26) The ALJ's opinion summarized the medical records, (R. 19-22), including Hackworth's treatment by her primary care physicians and treatment for rheumatoid arthritis and fibromyalgia since 1995 by David S. Caldwell, M.D. a rheumatologist at the Duke University Medical Center.

As regards the critical issue of residual functional capacity, the record contains three physical capacity assessment forms regarding Hackworth, completed at various times by two state agency physicians and Dr. Caldwell. (R. 165, 174, 266) While the forms completed by the state agency physicians contain some discussion regarding Hackworth, Dr. Caldwell's March 25, 2003 "Physical Limitations Assessment" consists entirely of check marks on a form document without accompanying analysis. The two state agency assessments conclude that Hackworth's impairments do not preclude her from substantial gainful activity. (R. 171, 177) Dr. Caldwell's form, in contrast, states that while not totally disabled, Hackworth is "[d]isabled from substantial work activity." (R. 268)

Considering the medical evidence and these assessments, the ALJ concluded that Hackworth retained the residual functional capacity for sedentary work with a sit/stand option, as follows:

> The physical limitation form Dr. Caldwell sent in is somewhat ambiguous. In one part of the form he says that she can walk and sit for a total of about 6 or 8 hours a day, but he concludes that she is disabled from all work. (Exhibit 11F). I believe this is a close case and is recognized as such by Dr. Caldwell. However, the final opinion on disability is reserved to the Commissioner of Social Security and I do not find it unreasonable that she could do a sedentary job.
>
> Accordingly, I find that the claimant retains the residual functional capacity for work at the sedentary exertional level that accommodates a sit/stand option. This finding is consistent with the latest DDS assessments and with the record as a whole (including the findings of Dr. Caldwell).

(R. 23)

Because of her impairments, the ALJ concluded that Hackworth is unable to perform any of her past relevant work, (R. 23-24), taking this case to step 5 of the sequential evaluation process. The Commissioner uses a five-step process in evaluating DIB claims. See 20 C.F.R. § 404.1520 (2003). See also Heckler v. Campbell, 461 U.S. 458, 460-62 (1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to her past relevant work; and (5) if not, whether she can perform other work. See 20 C.F.R. § 404.1520 (2003). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. See 20 C.F.R. § 404.1520(a) (2003).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. See 42 U.S.C.A. § 423(d)(2); McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall, 658 F.2d at 264-65; Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).

Since the alleged onset, Hackworth earned a college degree in human services counseling. (R. 289) A vocational expert testified that Hackworth had some transferable skills, (R. 306), and testified in response to a hypothetical question that jobs existed in the national economy for an individual of the Hackworth's age, education, past relevant work experience and residual

4

functional capacity, including positions as an information clerk and an interviewer. (R. 307) Based on the testimony of the vocational expert, the ALJ concluded that considering the Hackworth's age, educational background, work experience, and residual functional capacity, she is capable of making a successful adjustment to work that exists in significant numbers in the national economy.

Accordingly, the ALJ determined that Hackworth was not disabled and not entitled to DIB or SSI payments. The ALJ's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. (R. 6-8) Having exhausted all available administrative remedies, plaintiff has now appealed to this court.

The key issue in this case concerns the ALJ's analysis of Hackworth's residual functional capacity. Plaintiff contends that the Commissioner erred as a matter of law by not according controlling weight to certain medical source statements of Dr. Caldwell, her long-time treating rheumatologist. According to Hackworth, the ALJ did not give proper weight to certain medical source statements made by Dr. Caldwell as to what Hackworth can still do despite her severe impairments. Although a check-off form, Dr. Caldwell's assessment makes a number of statements regarding what Hackworth can and cannot do as a result of her impairments which differ in degree from the assessments of the two state agency physicians. Neither of those state agency physicians had examined Hackworth, much less treated her for years as had Dr. Caldwell.[1] Social Security Ruling 96-5p provides that "[m]edical source statements submitted by

---

[1] The state agency assessments were based to some degree on the medical consultant report of William E. Ramsey, M.D., who examined Hackworth in June, 2002. Ramsey's assessment states: "Overall, with the pain that she has in her joints, it would be difficult for her to do a physical job that required the use of a keyboard or do housework. She does have training in the office type skills and human resources management but she notes pain when walking one-

5

treating sources provide medical opinions which are entitled to special significance and may be entitled to controlling weight on issues concerning the nature and severity of an individual's impairment[s]." SSR 96-5p. There is no indication in the ALJ's decision what weight, if any, was given to the medical source statements in Dr. Caldwell's "Physical Limitations Assessment" form as to what Hackworth can and cannot do. Because the ALJ's decision does not indicate the weight given to Dr. Caldwell's medical source statements, this case must be reversed and remanded for appropriate evaluation of such statements consistent with SSR 96-5p.

The ALJ's decision also does not explain the consideration given by the ALJ to Dr. Caldwell's treating source opinion. While SSR 96-5p provides that "[t]reating source opinions on issues reserved to the Commissioner will never be given controlling weight," that Ruling also states that "the notice of the determination or decision must explain the consideration given to the treating source opinion(s)." 20 C.F.R. § 404.1527, which governs the Commissioner's evaluation of opinion evidence, is consistent. It states that while "[w]e will not give any special significance to the source of an opinion on issues reserved to the Commissioner . . . , 20 C.F.R. § 404.1527(e)(3), "[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." 20 C.F.R. § 1527(d)(2). While the ALJ need not give special significance or controlling weight to Dr. Caldwell's opinion that Hackworth is "[d]isabled from substantial work activity," (R. 268), as that issue is reserved to the Commissioner, 20 C.F.R. § 404.1527(d)(2) and SSR 96-5p require that the ALJ explain the weight and consideration given to the treating source's opinion. This the ALJ did not do.

---

quarter of a block with moving her arms, trying to use her arms over he head, etc. The exact rheumatologic condition is not clear from her examination even though she does carry the abovementioned diagnosis." (R. 208)

6

While the ALJ's decision exhaustively catalogs Hackworth's medical records, there is scant discussion of the consideration given to the medical source statements and treating source opinion in Dr. Caldwell's assessment. Instead of indicating what weight or consideration was accorded Dr. Caldwell's medical source statements and treating source opinion, the ALJ's decision merely states that "[t]he physical limitation form Dr. Caldwell sent in is somewhat ambiguous." (R. 23) This cryptic statement, and the cursory discussion that follows in the decision, does not satisfy the Commissioner's obligation set forth in the regulations and SSR 96-5p to explain the weight and consideration given to the Dr. Caldwell's medical source statements and treating source opinion.

In addition, the conclusion that the form completed by Dr. Caldwell is "somewhat ambiguous" does not satisfy the Commissioner's obligation for another reason. SSR 96-5p states:

> Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.

Although the ALJ found Dr. Caldwell's opinion to be "somewhat ambiguous," no effort was made to resolve the ambiguity or to recontact Dr. Caldwell to obtain clarification. Again, the Commissioner's regulatory obligation is clear:

> We will seek additional evidence or clarification from your medical source when the report from you medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.

7

20 C.F.R. § 404.1512(e)(1). Despite the ALJ's recognition of ambiguity in the report of Hackworth's treating rheumatologist, the ALJ did not seek clarification as required by SSR 96-5p and 20 C.F.R. § 404.1512(e)(1). For this reason as well, therefore, it is recommended that the decision of the Commissioner be reversed and remanded with instructions to recontact the treating source to resolve this ambiguity.

While the Commissioner certainly is entitled to disagree with Dr. Caldwell's assessment of Hackworth's residual functional capacity, the regulations and rulings require that the Commissioner explain the weight and consideration given to the medical source statements and opinions of such a treating physician, and, to the extent that resolution of ambiguity is required, make additional effort to resolve that ambiguity by seeking additional evidence or clarification. Because the decision of the ALJ did not comply with the Commissioner's regulatory obligations, this case must be reversed and remanded to the Commissioner for further administrative proceedings consistent with the Commissioner's obligations under SSR 96-5p and 20 C.F.R. §§ 1527(d)(2), (e)(1) and (e)(3).

The Clerk is directed immediately to transmit the record in this case to the Hon. Norman K. Moon, United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of the Court hereby is directed to send a certified copy of this Report and Recommendation to all counsel of record.

Enter this 7th day of January, 2005.

/s/ Michael F. Urbanski
Michael F. Urbanski
United States Magistrate Judge